JAMES LYONS (STATE BAR NO. 112582)
JLYONS@skadden.com
JONAH VAN ZANDT (STATE BAR NO. 224348)
JVANZAND@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Embarcadero Center, Suite 3800
San Francisco, California 94111-4144
Telephone: (415) 984-6400
Facsimile:  (415) 984-2698

GARRETT J. WALTZER (STATE BAR NO. 130764)
GWALTZER@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
Telephone:    (650) 470-4500
Facsimile:    (650) 470-4570

Attorneys for Nominal Defendant
YAHOO! INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| CONGREGATION BETH AARON, DERIVATIVELY ON BEHALF OF YAHOO! INC., <br><br> Plaintiff, <br><br> v. <br><br> JERRY YANG, RON BURKLE, ROBERT KOTICK, GARY WILSON, MAGGIE WILDEROTTER, ROY BOSTOCK, ERIC HIPPEAU, ARTHUR R. KERN, EDWARD KOZEL, and VYOMESH JOSHI, <br><br> Defendants, <br><br> − and − <br><br> YAHOO! INC., <br><br> Nominal Defendant. | **CASE NO.: 5:08-CV-05438-RMW** <br><br> **(1) NOMINAL DEFENDANT YAHOO! INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** <br><br> **(2) MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> <u>**Filed Under Separate Cover:**</u> <br><br> **(1) REQUEST FOR JUDICIAL NOTICE;** <br><br> **(2) DECLARATION OF JONAH S. VAN ZANDT IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE; and** <br><br> **(3) [PROPOSED] ORDER** <br><br> Date:      June 5, 2009 <br> Time:      9:00 a.m. <br> Dept.:     Courtroom 6, 4th Floor <br> Before:    Hon. Ronald M. Whyte |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 5, 2009, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the above captioned Court, located at 280 South 1st Street, San Jose, California, nominal defendant Yahoo! Inc. ("Yahoo!") will, and hereby does, move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice Congregation Beth Aaron's Amended Verified Shareholder Derivative Complaint ("Amended Complaint") for failure to state a claim upon which relief may be granted.

Yahoo! requests that this Court dismiss the Amended Complaint with prejudice on the ground that its claims are barred by the doctrines of release and res judicata arising from the Order and Final Judgment dated March 6, 2009, issued by the Delaware Court of Chancery in the action entitled In re Yahoo! Shareholders Litigation, Cons. C.A. No. 3561-CC (Del. Ch.), to which this Court is required to give full faith and credit as required by 28 U.S.C. §1738.

This motion is based on this notice of motion, the concurrently filed request for judicial notice and exhibits attached thereto, all other matters of which the Court may take judicial notice, all pleadings and papers on file with the Court, and any other authority this Court wishes to consider.

DATED:  March 30, 2009

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


By:_____/s/ James E. Lyons_____
JAMES E. LYONS
Attorneys for Nominal Defendant
YAHOO! INC.

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION .................................................................................... i

TABLE OF CONTENTS ...................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................ iii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ....................................................................... 1

INTRODUCTION ................................................................................................................ 2

FACTUAL STATEMENT .................................................................................................... 4

    A.    The Parties ......................................................................................... 4

    B.    Microsoft's Unsolicited Proposal To Acquire Yahoo! Spawns Multiple Lawsuits In California And Delaware. ........................... 5

    C.    Plaintiffs In Delaware File The Amended Complaints. ..................... 5

    D.    The Parties In The Delaware Action Reach A Settlement. ............... 6

    E.    Plaintiff Dismisses Its California Complaint And Files The Present Suit. ....................................................................................... 8

    F.    The Delaware Court Of Chancery Approves The Settlement. ......... 12

ARGUMENT ................................................................................................................... 13

    I.    THE COURT OF CHANCERY'S JUDGMENT APPROVING THE SETTLEMENT AGREEMENT IS ENTITILED TO FULL FAITH AND CREDIT IN THIS COURT. ................................................................ 13

    II.    DELAWARE COURTS WOULD BAR PLAINTIFF'S CLAIMS. ....................... 14

        A.    The Release Bars All of Plaintiff's Claims. ........................... 14

        B.    Res Judicata Bars All Of Plaintiff's State Law Claims. ........... 17

    III.    FEDERAL COURTS WOULD RESPECT THE DETERMINATION OF DELAWARE STATE COURTS TO BAR PLAINTIFF'S CLAIMS. ................... 19

    IV.    PLAINTIFF'S COLLATERAL ATTACK ON THE SETTLEMENT IS BARRED BY THE RELEASE AND DELAWARE JUDGMENT AS WELL. ....................................................................................... 22

Conclusion ................................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

Abramson v. Pennwood Investment Corp.,
    392 F.2d 759 (2d Cir. 1968) .......................................................................................16, 17

Ashare v. Brill,
    560 F. Supp. 18 (S.D.N.Y. 1983) ..............................................................................24

Bailey v. City of Wilmington,
    766 A.2d 477 (Del. 2001) ...................................................................................17, 23

Barroway v. Reynolds,
    176 A.2d 850 (Del. Ch. 1961) ..................................................................................24

Branch v. Tunnell,
    14 F.3d 449 (9th Cir. 1994) ......................................................................................4

Epstein v. MCA, Inc.,
    179 F.3d 641 (9th Cir. 1999) ..............................................................................3, 20

Ezzes v. Ackerman,
    234 A.2d 444 (1967) .........................................................................................23, 24

Glassey v. Amano Corp.,
    No. C-05-01604RMW, 2006 WL 889519 (N.D. Cal. Mar. 31, 2006), aff'd, 285 F.
    App'x 426 (9th Cir. 2008) ..................................................................................14, 17

Goldman v. Northrop Corp.,
    603 F.2d 106 (9th Cir. 1979) ..............................................................................17, 18

Kremer v. Chemical Construction Corp.,
    456 U.S. 461 (1982) ..........................................................................................13, 14

Lerner v. Reserve Management Co.,
    No. 80 Civ. 1238, 1981 WL 1641 (S.D.N.Y. June 17, 1981).........................17, 18

Levine v. Smith,
    591 A.2d 194 (Del. 1991) .........................................................................................16

Maldonado v. Flynn,
    417 A.2d 378 (Del. Ch. 1980) ..................................................................................18

Matsushita Electric Industrial Co. v. Epstein,
    516 U.S. 367 (1996) ........................................................................................3, 19, 20

McGowan Investors LP v. Keefe Bruyette & Woods, Inc.,
    540 F. Supp. 2d 571 (E.D. Pa. 2008)........................................................................21

In re McKesson HBOC, Inc. ERISA Litigation,
    No. C00-20030-RMW, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002)...............4

Migra v. Warren City School District Board of Education,
    465 U.S. 75 (1984) ...................................................................................................13

iii

Nottingham Partners v. Dana ("Nottingham I"),
    564 A.2d 1089 (Del. 1989) ................................................................... 12, 14, 15, 16

Nottingham Partners v. Trans-Lux Corp., ("Nottingham II"),
    925 F.2d 29 (1st Cir. 1991) ................................................................... 16, 20, 21

Sandler Associates, L.P. v. Bellsouth Corp.,
    818 F. Supp. 695 (D. Del. 1993), aff'd, 26 F.3d 123 (3d Cir. 1994) .............................21, 25

Estate of Spirtos v. One San Bernardino County Super. Ct.,
    443 F.3d 1172 (9th Cir. 2006)................................................................14

Sutton v. Sokotowski,
    No. C 06-6417 VRW, 2007 WL 1113950 (N.D. Cal. April 13, 2007) ................................. 4

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    127 S. Ct. 2499 (2007).......................................................................... 4

In re Union Square Associates Securities Litigation,
    Civ. A. No. 11028, 1993 WL. 513232 (Del. Ch. Nov. 29, 1993).........................................16

Valley National Bank of Arizona v. A.E. Rouse & Co.,
    121 F.3d 1332 (9th Cir. 1997)................................................................14

## RULES AND STATUTES

28 U.S.C. § 1738...........................................................................................3, 13

Del. S. Ct. R. 6............................................................................................18

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF ISSUES TO BE DECIDED

1. Should this Court give full faith and credit, pursuant to 28 U.S.C. §1738, to the Order and Final Judgment (the "Delaware Judgment") entered March 6, 2009, by the Delaware Court of Chancery in the action entitled In re Yahoo! Shareholders Litigation, Cons. C.A. No. 3561-CC (Del. Ch.) (the "Delaware action")?

2. Does the Delaware Judgment bar this action under the doctrines of release and res judicata?

## INTRODUCTION

Nominal defendant Yahoo! respectfully submits this memorandum of points and authorities in support of its motion to dismiss the Amended Complaint of Plaintiff Congregation Beth Aaron. The Court should dismiss all of the Congregation's state and federal claims, purportedly brought derivatively on Yahoo!'s behalf, with prejudice because they are barred by the doctrines of release and <u>res judicata</u> arising from the Delaware Judgment issued by Chancellor Chandler in the Delaware action. The Congregation's claims are virtually verbatim copies of claims arising out of the same set of occurrences for which the Delaware Court of Chancery certified a non-opt out nationwide class, granted final approval to a class and derivative settlement following a final fairness hearing, and dismissed with prejudice on the basis of a broad release that unquestionably includes the very claims the Congregation seeks to assert here. Plaintiff's transparent attempt to forum shop cannot succeed. For the better part of a year, Plaintiff participated in a group of California plaintiffs asserting identical claims which were not only consolidated, but stayed by the Santa Clara County Superior Court (Huber, J.), "pending resolution of the consolidated Delaware action."

Although the Congregation voluntarily dismissed its state court claim two weeks before announcement of the settlement in Delaware, there is no question that the Congregation received full notice of the Delaware settlement and, like all class members, was granted the opportunity to object. Having decided for its own apparent tactical reasons not to object to the Settlement Agreement, the precise terms of which were transparently public, Plaintiff cannot now avoid the preclusive effect of the release and Delaware Judgment. Even a cursory review here demonstrates that the claims the Congregation advances are virtually identical to those state and federal claims released in Delaware and fall within the four corners of the release and the final Delaware Judgment. The bar to Plaintiff's claims is particularly clear given that the claims determined by the Delaware Court of Chancery included derivative claims asserted on behalf of Yahoo! which properly could be and were released.

There can be no doubt that the Stipulation and Agreement of Settlement (the "Settlement Agreement") approved by Chancellor Chandler – which broadly releases all claims that were or

2

could have been alleged in the Delaware action or in any other forum – encompasses Plaintiff's purported derivative claims. The Delaware action alleged claims arising from (1) an unsolicited proposal by Microsoft Corporation ("Microsoft") to acquire Yahoo!, (2) Yahoo!'s proposed advertising agreement with Google, Inc. ("Google"), and (3) a related proxy contest initiated by stockholder Carl Icahn. Plaintiff's claims arise out of the same matters. In fact, large portions of the Amended Complaint appear to have been lifted verbatim from complaints filed in the Delaware action.

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, and binding Supreme Court precedent, this Court must afford Chancellor Chandler's Delaware Judgment the same effect it would receive in Delaware. If Plaintiff had filed its suit in Delaware, the Court of Chancery would hold that the Delaware Judgment approving the Settlement Agreement released all of Plaintiff's claims and that its complaint must be dismissed. In addition, because the Delaware Judgment finally resolved all state law claims, a Delaware court would hold that the non-federal claims in the Amended Complaint – all of which arise out of the same set of facts as the Delaware claims – are barred by res judicata.

Plaintiff cannot avoid the preclusive effect of the Settlement Agreement and Delaware Judgment through tactical pleading machinations. First, including in its Amended Complaint a claim that the Director Defendants violated Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), with respect to Yahoo!'s proxy statement issued in the proxy contest with Carl Icahn does not preserve Plaintiff's action. Both the United States Supreme Court and the Ninth Circuit have conclusively held that a Delaware state court judgment that released Exchange Act claims is entitled to full faith and credit by the federal courts. Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 385 (1996); Epstein v. MCA, Inc., 179 F.3d 641, 650 (9th Cir. 1999).

Second, Plaintiff's attack on the Director Defendants' decision to settle the Delaware action as a breach of fiduciary duty must also fail because it constitutes a brazen collateral attack on the Delaware Judgment and a needless and wasteful rehash of the Delaware action. After receiving notice of the Settlement Agreement in the Delaware action and of its right to object to the settlement and appear before the Court of Chancery, Plaintiff chose to sit by idly while the Court of

3

Chancery approved the Settlement Agreement in which Plaintiff and other Yahoo! shareholders received valuable consideration. Now, having received the full benefit of the Settlement Agreement in Delaware, Plaintiff seeks another bite at the apple. Plaintiff's allegation that the Director Defendants breached their fiduciary duties by agreeing to settle the Delaware action is a meritless attack on the Court of Chancery's determination that the Settlement Agreement was "fair, reasonable and adequate and in the best interest of the Class, Yahoo! and its stockholders."

## FACTUAL STATEMENT[1]

### A.    The Parties

Plaintiff is a resident of the State of New York and has been a shareholder of Yahoo! at all relevant times. Am. Compl. ¶ 16.

Nominal defendant Yahoo! is a Delaware corporation with its headquarters in Sunnyvale, California. Id. ¶ 17. Yahoo! is the second largest provider of internet services to users and businesses worldwide. Id.

The Director Defendants are the following current and former Yahoo! directors: Jerry Yang, Ron Burkle, Gary Wilson, Maggie Wilderotter, Arthur Kern, Eric Hippeau, Roy Bostock, Edward Kozel, Vyomesh Joshi, and Robert Kotick. Id. ¶¶ 18-27.

---

[1]    The Court must accept well-pleaded allegations as true but is not required to assume the truth of legal conclusions or unwarranted factual inferences. See In re McKesson HBOC, Inc. ERISA Litig., No. C00-20030-RMW, 2002 WL 31431588, at *12 (N.D. Cal. Sept. 30, 2002). The Court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," (Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509 (2007)), without converting this motion into one for summary judgment. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (considering documents under "incorporation by reference" doctrine "does not convert the motion to dismiss into a motion for summary judgment.") (citation omitted); Sutton v. Sokotowski, No. C 06-6417 VRW, 2007 WL 1113950, at *6 (N.D. Cal. April 13, 2007) ("The court may take judicial notice of official records without converting a Rule 12(b)(6) motion into a Rule 56 motion[.]"). As set forth in Yahoo!'s Request for Judicial Notice, the Court may judicially notice filings and orders in the related California and Delaware actions. See RJN ¶¶ 3-4. Judicial notice of the Settlement Agreement and Delaware Judgment is appropriate also because the Amended Complaint refers to them. Am. Compl. ¶¶ 106, 112; see RJN ¶ 5. Moreover, the Court may consider these documents and the Delaware complaints under the "incorporation by reference" doctrine because Plaintiff's claims depend on these documents, which establish that they are barred by release and res judicata. See RJN ¶ 7. Indeed, courts routinely take judicial notice of records in related actions to determine whether claims are barred by release or res judicata. See RJN ¶ 6.

**B. Microsoft's Unsolicited Proposal To Acquire Yahoo! Spawns Multiple Lawsuits In California And Delaware.**

On February 1, 2008, Microsoft Corporation publicly announced that it had made a proposal to Yahoo!'s board of directors to acquire all of the outstanding shares of Yahoo! common stock for a combination of cash and Microsoft stock. Am. Compl. ¶ 3. On February 11, 2008, Yahoo! issued a press release formally rejecting Microsoft's proposal. Id. ¶ 35.

In the weeks following Microsoft's announcement, ten lawsuits were filed challenging Yahoo!'s response to Microsoft's unsolicited proposal, five in the Delaware Court of Chancery, (id. ¶¶ 91-93), and five in California Superior Court for Santa Clara County, including a purported class action and derivative complaint filed by Plaintiff against Yahoo! and the Director Defendants. Congregation Beth Aaron v. Yang, (No. 1:08-cv-105632) (Cal. Super. Ct. filed Feb. 13, 2008). RJN Ex. G (3/5/08, Superior Court order consolidating California complaints). The Superior Court consolidated the California suits and the Court of Chancery consolidated the suits in Delaware, appointed lead counsel and designated an operative complaint. Id.; Am. Compl. ¶ 94. This operative Delaware complaint purported to allege class claims against Yahoo! and the Director Defendants challenging the board's response to Microsoft's unsolicited proposal, including the adoption of two change-in-control employee severance plans (the "Severance Plans"), which allegedly constituted an unreasonable deterrent to Microsoft or any other potential bidder. Am. Compl. ¶ 92.

On March 28, 2008, the Superior Court of California granted Yahoo!'s motion to stay the consolidated California action "pending resolution of the consolidated Delaware action." See RJN Ex. H (3/28/08 Superior Court order staying California action).

**C. Plaintiffs In Delaware File The Amended Complaints.**

Litigation continued in Delaware and on July 14, 2008, the Delaware plaintiffs filed a Motion for Leave to Amend and Supplement that attached a proposed Second Amended and Supplemental Consolidated Complaint (the "SAC"). RJN Exs. C (Settlement Agreement) at 4-5; A (SAC). The SAC: (a) added a claim for breach of the duty of disclosure respecting the proxy statement filed by Yahoo! on June 9, 2008, in connection with a proxy contest by Carl Icahn, (RJN

Ex. A (SAC) ¶¶ 152-60; 201-04); (b) added allegations relating to a June 13, 2008, agreement between Yahoo! and Google (the "Google Agreement") respecting a potential advertising partnership, (id. ¶¶ 161-66, 192-93, 198-99); (c) added allegations regarding the Severance Plans, (id. ¶¶ 5-9, 77-88, 98-99); and (d) alleged that, with respect to the claims in the SAC that were derivative in nature, demand on the Board was excused as futile. Id. ¶¶ 176-77.

On November 18, 2008, the Delaware plaintiffs filed an Amended Motion for Leave to Amend and Supplement that attached a proposed revised Second Amended and Supplemental Consolidated Complaint (the "Revised SAC"). RJN Exs. C (Settlement Agreement) at 5; B (Revised SAC).[2] The Revised SAC added (a) allegations relating to the Google Agreement, (RJN Ex. B (Revised SAC) ¶¶ 10, 151-58), and (b) allegations that the failure of Delaware defendants to terminate or amend the Severance Plans following the termination of Mr. Icahn's proxy contest was itself a breach of fiduciary duty. Id. ¶¶ 164-67. The Revised SAC maintained allegations that, to the extent the alleged claims were derivative in nature, the complaint pled demand futility. Id. ¶¶ 178-79. (The SAC and Revised SAC are referred to collectively herein as the "Delaware Complaints.")

### D. The Parties In The Delaware Action Reach A Settlement.

On December 10, 2008, Yahoo!, the individual defendants in the Delaware action (including the Director Defendants in this action), and the Delaware plaintiffs entered into the Settlement Agreement. RJN Ex. C (Settlement Agreement). The Delaware plaintiffs entered into the Settlement Agreement on behalf of itself and a "Settlement Class."[3] Id. at 1. Subject to the

---

[2]      Plaintiffs in the Delaware action filed the SAC under seal as an exhibit to its July 14, 2008, Motion for Leave to Amend and Supplement. See RJN Ex. C (Settlement Agreement) at 4-5. On July 17, 2008, Yahoo! filed a public version of the SAC redacting certain information. See RJN Ex. A (SAC) at 1. On November 18, 2008, plaintiffs in the Delaware action filed the Revised SAC under seal as an exhibit to its revised Motion for Leave to Amend and Supplement. See RJN Ex. C (Settlement Agreement) at 5. On November 21, 2008, Yahoo! filed a public version of the Revised SAC redacting certain information. See RJN Ex. B (Revised SAC) at 1. In its accompanying Request for Judicial Notice, Yahoo! requests that the Court take judicial notice of the public versions of the SAC and Revised SAC. See RJN ¶1(a)-(b).

[3]      The Settlement Class is defined to include all persons and entities who owned Yahoo! common stock, either of record or beneficially, at any time between January 31, 2008, and December 7, 2008. Excluded from the class are Yahoo!, its affiliates, the individual defendants and their families, and the legal representatives, heirs, successors, and assigns of such excluded

*(cont'd)*

approval of the Chancery Court, the Settlement Agreement "fully and finally release[s] any and all Settled Claims as against" the Defendants by Yahoo! or its stockholders. Id. ¶ 3. The "Settled Claims," which include claims brought on behalf of Yahoo! or the Settlement Class, are described in broad terms:

> any and all claims, debts, demands, rights or causes of action or liabilities whatsoever (including any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever, and including any claims arising under the federal securities laws or under federal, state, local, statutory or common law or any other law, rules or regulation), whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, whether class, individual or derivative in nature, including both known claims and Unknown Claims (i) that have been asserted in this Action by Plaintiffs, on behalf of themselves, the Class or Yahoo!, against [Yahoo! or the Director Defendants], or (ii) that could have been asserted in any forum by Plaintiffs or any Class Member, on behalf of themselves, the Class or Yahoo!, against [Yahoo! or the Director Defendants] which arise out of, relate to, or are based upon alleged breaches of fiduciary duty to Yahoo! and its shareholders or other alleged violations of law, including the federal securities laws or other federal, state or local law, arising from or in connection with Defendants' responses to Microsoft's proposal to acquire the Company, the Google Agreement or the proxy contest initiated by Carl Icahn, prior to the last day of the Class Period, including without limitation the matters alleged in the [Delaware Complaints].

Id. ¶ 1(q) (emphasis added). In consideration for this broad release, Yahoo! amended the Severance Plans in various ways. Id. ¶ 2.

The parties in Delaware informed the Court of Chancery that they had reached a settlement and the Court of Chancery set a hearing date to determine whether to grant final approval to the Settlement Agreement, approved a form of notice (the "Notice") and directed Yahoo! to send the notice by U.S. mail to Yahoo! shareholders. RJN Exs. D (Order for Notice of Hearing) ¶¶ 3, 6; C (Settlement Agreement) at Ex. B (Notice). The Court of Chancery also ordered the publication of a summary of the Notice in the *Investor's Business Daily* and over the PR Newswire. RJN Exs. D (Order for Notice of Hearing) ¶ 6; C (Settlement Agreement) at Ex. D.

_____
*(cont'd from previous page)*
party. Settlement Agreement ¶1(a). The Congregation is a member of this class. See Am. Compl. ¶ 16.

The Notice included a full description of the changes to the Severance Plans, and of the class and derivative claims that would be released upon Court of Chancery approval. RJN Ex. C at Ex. B (Notice) ¶¶ 37-45. The Notice also disclosed that these released claims included claims arising out of, relating to or based upon "alleged violations of law, including the federal securities laws or other federal, state or local law" relating to the Microsoft proposal, the Google Agreement or the proxy contest with Mr. Icahn. Id. at Ex. B (Notice) ¶ 41 (emphasis added). The Notice informed Yahoo! stockholders who objected to the "certification of the Class, the Settlement and/or the Final Judgment to be entered by the Court . . . or otherwise wishe[d] to be heard, [that they] may appear personally or by counsel at the Settlement Hearing…" Id. at Ex. B (Notice) ¶ 48. Any such objecting stockholder had until 10 days before the Settlement Hearing to submit a written notice of an intent to appear at the hearing and a statement detailing the bases for the objections. Id.

There can be no doubt that Plaintiff received the Notice because its Amended Complaint, filed four days before the deadline to object to the Settlement Agreement, quotes extensively from the Notice's description of the changes to the Severance Plans under the Settlement Agreement. Compare RJN Ex. C at Ex. B (Notice) ¶ 37(i)-(iv) with Am. Compl. ¶ 109(i)-(iv). Plaintiff also admits that the Settlement Agreement would release all "alleged breaches of fiduciary duty to Yahoo! and its shareholders or other alleged violations of law, including the federal securities laws or other federal, state or local law, arising from or in connection with Defendants' responses to Microsoft's proposal to acquire the Company, the Google Agreement or the proxy contest initiated by Carl Icahn." Am. Compl. ¶ 112 (quoting RJN Ex. C at Ex. B (Notice) ¶ 41). Plaintiff does not allege in the Amended Complaint that it submitted any objection to the Settlement Agreement to the Delaware plaintiffs' counsel, Yahoo!, or the Court of Chancery. Furthermore, nowhere in the Delaware Judgment is there any reference to Plaintiff filing an objection to the Settlement Agreement. RJN Ex. F (Delaware Judgment).

E. **Plaintiff Dismisses Its California Complaint And Files The Present Suit.**

On November 21, 2008, the Congregation requested voluntary dismissal of its complaint in California Superior Court, which the court granted on November 24, 2008. See RJN Ex. I (11/24/08 Order Granting Request for Voluntary Dismissal). Shortly thereafter, Plaintiff filed a

purported verified shareholder derivative complaint in this Court (the "Original Complaint"). Dkt. # 1. One week after Plaintiff filed its Original Complaint, the parties in the Delaware action entered into the Settlement Agreement. See RJN Ex. C (Settlement Agreement). On February 20, 2009, two weeks before the Settlement Hearing in Delaware and four days before the deadline to file objections to the Settlement Agreement, Plaintiff filed the Amended Complaint. Dkt. # 6. The Amended Complaint purports to allege derivative claims on behalf of Yahoo! against the Director Defendants for (1) breach of fiduciary duty, (Am. Compl. ¶¶ 144-45); (2) corporate waste, (id. ¶¶ 146-48); (3) violation of Section 14(a) of the Exchange Act of 1934, (id. ¶¶ 136-41); and (4) a claim for control person liability under Section 20(a) of the Exchange Act premised on the Section 14(a) claim. Id. ¶¶ 142-43.

Plaintiff alleges that the Director Defendants breached their fiduciary duties by (1) failing to consider, in good faith, Microsoft's unsolicited proposal, (id. ¶¶ 4-5, 11-12); (2) adopting the Severance Plans, which were designed to frustrate Microsoft's acquisition attempts by imposing inordinate costs on any potential acquirer, (id. ¶¶ 6-7, 10, 37, 45); and (3) attempting to enter into the Google Agreement to fend off Microsoft's acquisition attempts. Id. ¶¶ 8, 68, 72. Plaintiff's Section 14(a) claim is based on the June 9, 2008, proxy statement issued by Yahoo!. These are the same matters alleged in the Delaware Complaints.

Indeed, as illustrated in the table below, many of Plaintiff's allegations are cribbed directly from the allegations in the earlier Delaware Complaints:

| Plaintiff's Amended Complaint | The Delaware Complaints |
|---|---|
| **Severance Plans** | |
| "In statements made under oath in another case, Timothy J. Sparks, president of Compensia stated that prior to February 5, he told Yahoo that, based on his prior experience advising acquirers, he was opposed to granting employees the right to resign and claim severance benefits based on changes to their 'duties or responsibilities, … [because] those provisions have troubling administrative elements to them.' Acquirers find it difficult to fight severance claims based on such 'duties or responsibilities' provisions and | "Sparks testified that prior to February 5, he told Yahoo management that, based on his prior experience advising acquirers, he was opposed to granting employees the right to resign and claim severance benefits based on changes to their 'duties or responsibilities.' Sparks told Yahoo management that in his experience, 'those provisions have troubling administrative elements to them.' Sparks knew that acquirors find it difficult to fight severance claims based on such 'duties or responsibilities' provisions, and that acquirors |

| Plaintiff's Amended Complaint | The Delaware Complaints |
|---|---|
| often take the path of least resistance, which means interpreting the provision broadly and paying the severance claim." Am. Compl. ¶ 40. | often taken the path of least resistance, which means interpreting the provision broadly and paying the severance claim." Revised SAC ¶ 77. |
| "On February 8, 2008, despite the advice of its own consultants, Compensia, that the plan was 'nuts,' the Yahoo Board approved the change-in-control severance plans in concept and delegated to the Compensation Committee the authority to adopt the specific details of the plans. No independent consultant attended the Board meeting or provided an opinion on the plans' cost or scope. According to the Board book, if Microsoft paid severance benefits to all employees, the cost of the plan at a $31 per share deal price would be <u>over $2.1 billion</u> and at $35 per share would be <u>almost $2.4 billion</u>. The calculations also showed that the great bulk of the expense was for potential severance payments, not for retention incentives to key employees." Am. Compl. ¶ 41 (emphasis in original). | "The Board approved the change-in-control severance plan in concept on February 8 and delegated to the Compensation Committee the authority to adopt the specific terms of the plans. No independent consultant attended the Board meeting or provided an opinion on the plan's cost or scope. The management-prepared board book did, however, contain calculations showing that if Microsoft paid severance benefits to all employees, the cost of the plan at a $31 per share deal price would be <u>over $2.1 billion</u> and at $35 per share would be <u>almost $2.4 billion</u>… The calculations also showed that the great bulk of the expense was for potential severance payments, not for retention incentives." Revised SAC ¶ 91 (emphasis in original). |
| "The entire Board was self-interested in the approval of the severance plans. 'Change of Control' is defined broadly to include not just an acquisition but also the replacement of a majority of the Board in a proxy contest. This means that a new board majority, elected by Yahoo's shareholders, faces the risk of massive severance payouts as part of any reduction in force, reorganization or strategic alliance, or even from the natural attrition that would take place in a cutting-edge technology company such as Yahoo in which changes in job duties or responsibilities occur as a matter of course. Upon the election of a new slate of directors, any employee is incented to resign following a change of duties and make a credible claim for severance benefits." Am. Compl. ¶ 45. | "The entire Board was self-interested in the approval of the severance plans. 'Change of Control' is defined broadly to include not just an acquisition but also the replacement of a majority of the Board in a proxy contest. This means that a new board majority elected by Yahoo's shareholders must pay massive severance payouts as part of any reduction in force, reorganization or strategic alliance, or even from the natural attrition that would take place in a cutting-edge technology company such as Yahoo in which changes in job duties or responsibilities occur as a matter of course. Upon the election of a new slate of directors, any employee is incented to resign following a change of duties and make a credible claim for severance benefits." Revised SAC ¶ 102. |
| **Yahoo!'s June 9 Proxy Statement** ||
| "The June 9, 2008, Proxy Statement misleadingly states on page 39 that 'Compensia advised the Company and F.W. Cook & Co. advised the Compensation Committee with respect to the terms of the [Severance Plans].'" Am. Compl. ¶ 66. "Even though George Paulin of Frederic W. | "The Proxy misleadingly states on page 39 that 'Compensia advised the Company and F.W. Cook & Co. advised the Compensation Committee with respect to the terms of the [Severance Plans].'" SAC ¶ 154. "Even though George Paulin of Frederic W Cook & Co. was the independent advisor to the |

10

| Plaintiff's Amended Complaint | The Delaware Complaints |
|---|---|
| Cook & Co. was the independent advisor to the Compensation Committee, and even though Paulin had recently testified before Congress about the importance of Compensation Committees relying on independent advice, and rather than relying on advisors beholden to management, the Yahoo Board and its Compensation Committee had left Paulin in the dark about its employment practices." Am. Compl. ¶ 87. | Compensation Committee, and even though Paulin had recently testified before Congress about the importance of Compensation Committees relying on independent advice, rather than relying on advisors beholden to management, Kern had left Paulin in the dark an turned to Compensia's Sparks for advice." SAC ¶ 156. |
| "On February 6, 2008, Paulin had caustically commented to Defendant Kern, that 'at this point I feel like I am functioning as a fifth wheel at Yahoo anyway.' Paulin's involvement in Yahoo's compensation was very limited and Paulin testified that he did not offer any advice or guidance or analysis related to lower level employees outside of the senior management group." Am. Compl. ¶ 88. | "On the morning of February 6, Paulin caustically commented to Defendant Kern, that 'at this point I feel like I am functioning as a fifth wheel at Yahoo anyway. . . .' Paulin limited his advice to how the proposed severance plans treated senior executives. He testified that he did not offer any advice or guidance or analysis related to lower level employees outside of the senior management group." SAC ¶¶ 157-58. |
| **The Google Advertising Agreement** | |
| "The real effect of a Google-Yahoo deal, however, was to erect insurmountable obstacles to Microsoft's bid for Yahoo. Even if a Yahoo-Google deal passed antitrust muster, which was unlikely, any arrangement among Microsoft, Yahoo and Google would be impossible from an antitrust perspective and any effort to undo a Yahoo-Google deal would be uncertain, prolonged and highly disruptive." Am. Compl. ¶ 72. | "The real purpose of a Google-Yahoo deal, however, was to erect insurmountable obstacles to Microsoft's bid for Yahoo. Even if a Google deal passed antitrust muster, any arrangement among Microsoft, Yahoo and Yahoo-Google would be impossible and any effort to undo a Yahoo-Google deal would be uncertain, prolonged and highly disruptive." Revised SAC ¶ 132. |

Unfortunately, space limitations prevent Yahoo! from quoting all of Plaintiff's allegations that appear to have been copied verbatim from the Delaware action. Compare Am. Compl. ¶¶ 7, 38 with Revised SAC ¶¶ 5, 65; Am. Compl. ¶ 44 with Revised SAC ¶ 100; Am. Compl. ¶ 55 with Revised SAC ¶ 145; Am. Compl. ¶ 59 with Revised SAC ¶ 142; Am. Compl. ¶ 65 with SAC ¶¶ 152, 153; Am. Compl. ¶ 67 with SAC ¶ 155; Am. Compl. ¶ 69 with Revised SAC ¶ 130; Am. Compl. ¶ 89 with SAC ¶ 160.

In its Amended Complaint, Plaintiff also alleges that the Director Defendants breached their fiduciary duties to Yahoo! and its shareholders by agreeing to settle the Delaware action, thereby avoiding liability for the breaches of fiduciary duty alleged and litigated in Delaware. Am. Compl.

11

¶¶ 2, 115-16, 120, 145.  Because this claim is "based upon alleged breaches of fiduciary duty…

arising from or in connection with Defendants' responses to Microsoft's proposal to acquire the

Company, the Google Agreement or the proxy contest initiated by Carl Icahn…" this claim is

expressly released by the Settlement Agreement.  See RJN Ex. C (Settlement Agreement) ¶ 1(q).

All of Plaintiff's purported derivative claims therefore fall within the release contained in the

Settlement Agreement approved by Chancellor Chandler.

### F.        The Delaware Court Of Chancery Approves The Settlement.

The Delaware Court of Chancery held a settlement hearing on March 6, 2009, after which it

entered the Delaware Judgment approving the Settlement Agreement as "fair, reasonable and

adequate and in the best interests of the Class, Yahoo! and its stockholders…"  RJN Ex. F

(Delaware Judgment) ¶ 5.  The Court of Chancery also certified the Delaware action as a class

action "pursuant to Chancery Court Rules 23(a), 23(b)(1) and 23(b)(2) without opt-out rights, on

behalf of a class consisting of all persons and entities who owned Yahoo! common stock… at any

time between January 31, 2008 and December 7, 2008, inclusive…," subject to certain exclusions.[4]

Id. ¶ 3.  Plaintiff is a member of this class.  See Am. Compl. ¶ 16.  The Court of Chancery

approved and adopted, without modification, the release of claims set forth in the Settlement

Agreement.  RJN Ex. F (Delaware Judgment) ¶ 7.

The Court of Chancery also determined that the Notice had "been provided to the Class and

to Yahoo! stockholders as of December 7, 2008, pursuant to and in the manner directed by the

Scheduling Order; proof of mailing and publication of notice was filed with the Court; and full

opportunity to be heard has been offered to all Parties, the Class, current Yahoo! stockholders and

persons in interest."  Id. ¶ 1.  Thus, the Court of Chancery "determined that all members of the

Class, Yahoo! and current Yahoo! stockholders are bound by this Order and Final Judgment."  Id.

The Court of Chancery also held, that the Delaware plaintiffs "and their counsel have fairly and

adequately protected the interests of the Class."  Id. ¶ 2.  In authorizing a fee award of $8.4 million

---

[4]        These rules are very similar to Fed. R. Civ. P. 23(a), 23(b)(1) and 23(b)(2).  See
Nottingham Partners v. Dana ("Nottingham I"), 564 A.2d 1089, 1094 (Del. 1989) ("Chancery
Court Rule 23 is almost identical to Rule 23 of the Federal Rules of Civil Procedure.")

to counsel for the Delaware plaintiffs, Chancellor Chandler found that counsel "bestowed a sufficient benefit on Yahoo's shareholders to warrant their fee" through the changes Yahoo! agreed to make to the Severance Plans. RJN Ex. E (3/6/09 Order on Fees) at 2.

Under the terms of the Settlement Agreement, the Delaware Judgment is deemed final "if no appeal is filed, [on] the expiration date of the time for filing or noticing any appeal from the [Delaware Judgment]." See RJN Ex. C (Settlement Agreement) ¶1(h). The deadline to file an appeal of the Delaware Judgment is April 6, 2009. See Del. Sup. Ct. R. 6. Thus, barring any appeals, the Delaware Judgment will become final prior to the Court's hearing on this motion.

## ARGUMENT

### I. THE COURT OF CHANCERY'S JUDGMENT APPROVING THE SETTLEMENT AGREEMENT IS ENTITLED TO FULL FAITH AND CREDIT IN THIS COURT.

As illustrated above, Plaintiff's purported derivative claims are based on the same matters underlying the Delaware action and alleged in the Delaware Complaints and, thus, were released by Yahoo! under the Settlement Agreement approved by the Court of Chancery. Under the Full Faith and Credit Act, 28 U.S.C. § 1738, the Court of Chancery's judgment approving the Settlement Agreement should be recognized by this Court as precluding all of Plaintiff's claims.

The Full Faith and Credit Act provides that the "judicial proceedings of any court of any []State… shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State…." 28 U.S.C. § 1738. The United States Supreme Court has long held that the Full Faith and Credit Act requires federal courts to give state court judgments the same preclusive effect that they would be afforded in the courts of the rendering state. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 US 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."); Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466 (1982) ("Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.").

For example, in <u>Kremer</u> the District Court determined that a state court judgment holding that the defendant had not discriminated against the plaintiff was entitled to full faith and credit and barred plaintiff's federal suit under Title VII of the Civil Rights Act. <u>Id.</u> at 485. On appeal, the Supreme Court stated that "§ 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken." <u>Id.</u> at 481-82. The Court concluded that a New York state court would hold that the judgment barred plaintiff's suit and affirmed the district court's dismissal of the suit. <u>Id.</u> at 482. <u>See also</u> <u>Estate of Spirtos v. One San Bernardino County Super. Ct.</u>, 443 F.3d 1172, 1176 (9th Cir. 2006) (holding that federal court was bound under Full Faith and Credit Act by determination in state court that plaintiff was not a creditor of a probate estate); <u>Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.</u>, 121 F.3d 1332, 1335 (9th Cir. 1997) (holding that plaintiff's claims were barred by judgment in state court action: "The Full Faith and Credit Act requires federal courts to give state court judgments the same effect they would have in the state in which they were entered."); <u>Glassey v. Amano Corp.</u>, No. C-05-01604RMW, 2006 WL 889519, at *5 (N.D. Cal. Mar. 31, 2006) ("This court must give the same preclusive effect to the judgment of a state court as that state judicial system would."), <u>aff'd</u>, 285 F. App'x 426 (9th Cir. 2008).

Therefore, the Delaware Judgment approving the Settlement Agreement is entitled to the same preclusive effect in this Court as it would be afforded by a Delaware state court. As explained below, a Delaware court would hold that the Delaware Judgment compels dismissal of the Amended Complaint under the principles of release and <u>res</u> <u>judicata</u>.

## II.    <u>DELAWARE COURTS WOULD BAR PLAINTIFF'S CLAIMS.</u>

### A.    <u>The Release Bars All of Plaintiff's Claims.</u>

Delaware courts recognize that a court-approved settlement in a class and derivative action may release claims that were either asserted in the settled action or that arise from the same factual gravamen or transactional basis. <u>Nottingham I</u>, 564 A.2d at 1106. Such a release may encompass claims that could not have been litigated in the settled action, including exclusively federal claims. <u>Id.</u> at 1106-07.

14

The Settlement Agreement releases all derivative claims on behalf of Yahoo! against the Director Defendants (1) that were asserted in the Delaware action or (2) "that could have been asserted in any forum by any Class Member, on behalf of themselves, the Class or Yahoo!, against [Yahoo! or the Director Defendants]" arising out of "Defendants' responses to Microsoft's proposal to acquire the Company, the Google Agreement or the proxy contest initiated by Carl Icahn," including the matters alleged in the Delaware Complaints. RJN Ex. C (Settlement Agreement) ¶ 1(q). As set forth above, these are precisely the same claims alleged in this action. See supra at 9 (noting Plaintiff's claims based on (1) Microsoft's proposal, (2) the Google Agreement, and (3) the Icahn proxy contest). Indeed, Plaintiff's Section 14(a) claim is based on the same June 9, 2008, proxy statement that formed the basis for disclosure claims pled by the Delaware plaintiffs in their SAC. See Am. Comp. ¶ 138; RJN Ex. A (SAC) ¶ 152. Moreover, many of the alleged omissions and misrepresentations underlying Plaintiff's Section 14(a) claim are nearly identical to allegations in the Second Amended Complaint in Delaware. See Chart, supra at 9-11. In fact, Plaintiff concedes that its federal claims fall within the scope of the release and the Delaware Judgment. Am. Compl. ¶ 112.

A Delaware court would give effect to the release in the Settlement Agreement by holding that Plaintiff is precluded from asserting any of its claims. In Nottingham I, plaintiff brought a purported class and derivative action in the Court of Chancery against a corporation and its directors. Plaintiff asserted state law claims and alleged that the directors breached their fiduciary duties by entrenching themselves and by making misleading disclosures in a proxy statement. 564 A.2d at 1091, 1093. The parties reached a settlement containing a broad release of all claims arising from the action or "any matters, transactions or occurrences referred to" in the complaint. Id. at 1105 n.35. The Court of Chancery certified the action as a non-opt out class action and approved the settlement over a class member's objection that it would release his Section 14(a) claim pending in federal court. Id. at 1093-94.

The Delaware Supreme Court affirmed. The court held that "'[i]n order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action,'" the Court of Chancery may release claims based on the same set of operative facts as

15

those alleged in the prior action. Id. at 1106 (citation omitted). Although the Delaware Supreme Court recognized that the release in the settlement agreement would likely lead to dismissal of the objector's Section 14(a) claim in district court, it nevertheless held that "the Court of Chancery has a history of approving settlements that have implicitly or explicitly included a general release, which would also release federal claims." Id. at 1105; see also In re Union Square Assocs. Sec. Litig., Civ. A. No. 11028, 1993 WL 513232, at *5-6 (Del. Ch. Nov. 29, 1993) (holding that Court of Chancery-approved class action settlement released plaintiff's individual claims that arose from same facts underlying class action even though he could not have asserted those claims in the class action).

Plaintiff cannot avoid the impact of the release by arguing that his Section 14(a) claim is based on different nondisclosure violations in the June 2008 proxy statement. The Nottingham I objector also argued that the release in the settlement agreement did not encompass his Section 14(a) claim because he alleged a different nondisclosure theory than that alleged in the settled action and, thus, that his claim was not released under the settlement agreement. 564 A.2d at 1105-07. The court rejected this argument, holding that the Section 14(a) claim was released under the settlement agreement because it arose from a "transaction… referred to in the complaint," i.e. the proxy statement. Id. at 1106-07; see Nottingham Partners v. Trans-Lux Corp., ("Nottingham II") 925 F.2d 29, 33 (1st Cir. 1991) (holding in federal companion case to Nottingham I that "[t]here can be no serious question but that the claims pressed in this action fell well within the language of the general release…. The two suits, notwithstanding any differences in remedies sought or theories of recovery pleaded, shared a common gravamen.").

That Plaintiff's claims are released is made even clearer by the fact that Plaintiff purports to assert derivative claims that belong to Yahoo!. See, e.g., Levine v. Smith, 591 A.2d 194, 200 (Del. 1991) (derivative action "asserts on behalf of a corporation a claim belonging not to the shareholder, but to the corporation."). As Chancellor Chandler did here by approving the Settlement Agreement, Delaware courts recognize the ability of a corporation to execute "a general release in conjunction with the termination of litigation…." Nottingham I, 564 A.2d at 1105; cf. Abramson v. Pennwood Inv. Corp., 392 F.2d 759, 762 (2d Cir. 1968) (under New York law,

corporation had the power to approve a general release of its claims against defendants "as a condition of settlement of the state action."). The Delaware Judgment, therefore, requires dismissal of the Amended Complaint because it alleges claims that Yahoo! released and no longer possesses. See Abramson, 392 F.2d at 762 (claims in federal derivative suit were released by settlement in state derivative suit).

Thus, a Delaware court would hold that the Settlement Agreement releases all of Plaintiff's claims, including its claim under Section 14(a), and bars litigation of these claims.

**B.    Res Judicata Bars All Of Plaintiff's State Law Claims.**

All of Plaintiff's claims are barred because they were released by the Settlement Agreement and the Delaware Judgment. Plaintiff's state law claims for breach of fiduciary duty and corporate waste are barred for the additional reason that the Delaware Judgment precludes these claims under res judicata because they were, or could have been, brought in the Delaware action. See Glassey, 2006 WL 889519, at *5 (res judicata "precludes not only claims that were actually brought in a prior case, but all claims that could have been brought because they were based on the same common nucleus of operative fact.").

Under Delaware law, a party asserting res judicata must meet the following five factors:

> (1) the court making the prior adjudication had jurisdiction, (2) the parties in the present action are either the same parties or in privity with the parties from the prior adjudication, (3) the cause of action must be the same in both cases or the issues decided in the prior action must be the same as those raised in the present case, (4) the issues in the prior action must be decided adversely to the plaintiff's contentions in the instant case, and (5) the prior adjudication must be final.

Bailey v. City of Wilmington, 766 A.2d 477, 481 (Del. 2001). Each of these factors is met here.

First, the Court of Chancery properly exercised jurisdiction over the Delaware action. Second, this action involves the same parties as the Delaware action. The real party in interest in this case is Yahoo! on whose behalf the case is brought. See Goldman v. Northrop Corp., 603 F.2d 106, 109 (9th Cir. 1979) (successive derivative actions brought by different shareholders of corporation involved the same parties for res judicata purposes: "[t]he corporation was the sole real party in interest in both cases."); Lerner v. Reserve Mgmt. Co., No. 80 Civ. 1238, 1981 WL

17

1641, at *2 U.S. Dist. Court (Lerner) (S.D.N.Y. June 17, 1981) (derivative actions brought by different shareholders of the same company were brought by the same "real party in interest" and, thus, involved the same parties <u>res judicata</u> purposes). Yahoo! was also the real party in interest in Delaware where plaintiffs brought their claims as class claims and derivatively on behalf of Yahoo!. <u>See</u> RJN Ex. B (Revised SAC) at 1. "The fact that different shareholders are involved in bringing the derivative actions does not negate identity of parties" for <u>res judicata</u> purposes. <u>Lerner</u>, 1981 WL 1641, at *2; <u>see</u> <u>Goldman</u>, 603 F.2d at 109 ("The parties are the same, although represented by different shareholders."). Moreover, both this and the Delaware action allege claims against the same Director Defendants. <u>See</u> Am. Compl. ¶¶ 18-27; <u>See</u> RJN Ex. B (Revised SAC) ¶¶ 20-30.

Third, the issues in the prior action were decided adversely to Plaintiff because the Court of Chancery released the state law claims that Plaintiff seeks to assert. <u>See</u> RJN Ex. F (Delaware Judgment) ¶ 7. Fourth, absent appeal, the Delaware Judgment will become final on April 6, 2009, well before the hearing on this motion. <u>See</u> RJN Ex. C (Settlement Agreement) ¶ 1(h) (stating that Delaware Judgment will become final if no appeals are filed by the deadline for such appeals); Del. Sup. Ct. R. 6 (providing that a notice of appeal in a civil case must be filed within thirty days of the entry upon the docket of the order from which the appeal is taken).

Finally, with respect to the third prong, Plaintiff's state law claims involve the same causes of action as the Delaware action. As set forth above, Plaintiff's breach of fiduciary duty claim is based on the same matters alleged in the Delaware Complaints. Therefore this claim was actually litigated in the Delaware action and is barred by <u>res judicata</u>. Although Plaintiff has added a claim for corporate waste, it does not add any additional factual allegations. <u>See</u> Am. Compl. ¶¶ 146-147. Therefore, this claim is based on the same transactions underlying Plaintiff's breach of fiduciary duty claim, which are the same transactions litigated in the Delaware action. Causes of action are the same for <u>res judicata</u> purposes where they arise from the same transaction, irrespective of the "substantive legal theories or types of relief which are sought." <u>See</u> <u>Maldonado v. Flynn</u>, 417 A.2d 378, 381 (Del. Ch. 1980) (holding that <u>res judicata</u> applied to preclude plaintiff's shareholder derivative suit where claims in present suit involved same amendment to stock option plan that formed the basis of claims in parallel federal derivative suit dismissed by district court).

For the reasons set forth above, the Delaware Judgment bars all of Plaintiff's state law claims under the doctrine of <u>res judicata</u>.

## III.   FEDERAL COURTS WOULD RESPECT THE DETERMINATION OF DELAWARE STATE COURTS TO BAR PLAINTIFF'S CLAIMS.

The United States Supreme Court, the Ninth Circuit and other federal courts around the country overwhelmingly give full faith and credit to Court of Chancery settlement judgments, even when to do so results in the dismissal with prejudice of Exchange Act claims within the federal court's exclusive jurisdiction. This Court should do the same by dismissing the Amended Complaint with prejudice.

In <u>Matsushita Electric Industrial Co. v. Epstein</u>, 516 U.S. 367 (1996), parallel putative class actions were filed in the Delaware Court of Chancery and the Central District of California by different purported class representatives alleging misconduct by the directors of MCA, Inc. in the course of MCA's acquisition by Matsushita. <u>Id.</u> at 370. Plaintiffs in the federal action alleged Exchange Act claims. <u>Id.</u> The district court declined to certify the class and entered summary judgment for Matsushita. <u>Id.</u> Thereafter, the parties to the Delaware action reached a settlement that released plaintiffs' Exchange Act claims. <u>Id.</u> at 370-71. The Court of Chancery certified a settlement class that included the federal plaintiffs and approved the settlement. <u>Id.</u> On appeal to the Ninth Circuit, Matsushita argued that the Court of Chancery's judgment was an additional bar to plaintiffs' suit. <u>Id.</u> at 372. The Ninth Circuit held that because the plaintiffs' Exchange Act claims were exclusively federal, the Court of Chancery could not release these claims. <u>Id.</u>

Because the Ninth Circuit failed to follow the dictates of 28 U.S.C. § 1738, the Supreme Court reversed. The Court held that the state court settlement judgment was not exempted from the operation of § 1738 either because the judgment was the product of a class action or because it incorporated a settlement agreement releasing claims within the exclusive jurisdiction of the federal courts. <u>Id.</u> at 373. "[W]e conclude that § 1738 is generally applicable in cases in which the state court judgment at issue incorporates a class action settlement releasing claims solely within the jurisdiction of the federal courts." <u>Id.</u> at 375. The Court then looked to Delaware law to ascertain the effect of the Delaware settlement judgment and concluded: "we think that a Delaware

19

court would afford preclusive effect to the settlement judgment in this case, notwithstanding the fact that respondents could not have pressed their Exchange Act claims in the Court of Chancery." Id. at 378.  Finally, the Court found that Section 27 of the Exchange Act (exclusive jurisdiction in federal court for Exchange Act claims) did not partially repeal § 1738:

> While § 27 prohibits state courts from adjudicating claims arising under the Exchange Act, it does not prohibit state courts from approving the release of Exchange Act claims in the settlement of suits over which they have properly exercised jurisdiction . . . .

Id. at 381

The Ninth Circuit's ruling in Epstein v. MCA, Inc., 179 F.3d 641 (9th Cir. 1999) — a decision on remand from Matsushita — establishes the principle in this Circuit that a Delaware state court judgment releasing Exchange Act claims is entitled to full faith and credit by the federal courts.  In reaching this conclusion, the court rejected plaintiffs' argument that the Court of Chancery's judgment approving the settlement violated their due process rights and thus was not entitled to full faith and credit.  Id. at 644.  Relying upon the Matsushita Court's analysis, the Ninth Circuit found that due process requirements necessary to bind absent class members were met: (i) the Court of Chancery found that the settlement was "fair, reasonable and adequate and in the best interests of the… Settlement class"; (ii) notice to the class was in "full compliance with… the requirements of due process"; (iii) the Delaware plaintiffs, "as representatives of the Settlement Class, have fairly and adequately protected the interests of the Settlement Class."  Id. at 645 (citing Matsushita, 516 U.S. at 378-79).[5]  The court concluded that "the Delaware judgment was not constitutionally infirm and must be accorded full faith and credit."  Id. at 650.

Similarly in Nottingham II, 925 F.2d 29, the district court granted summary judgment dismissing individual claims that defendants had violated Section 14(a) and Delaware statutory and common law by not disclosing to Trans-Lux shareholders negotiations for a sale of cinemas in the

---

[5]     The Court of Chancery made identical findings in this case: (i) "[t]he Settlement is found to be fair, reasonable and adequate and in the best interests of the Class, Yahoo! and its stockholders . . ." RJN Ex. F (Delaware Judgment) ¶ 5; (ii) "[t]he form and manner of notice is hereby determined to have been the best notice practicable under the circumstances and to have been given in full compliance with each of the requirements of due process . . ." (id. ¶ 1); and (iii) "Plaintiffs and their counsel have fairly and adequately protected the interests of the class." Id. ¶ 2.

context of a recapitalization plan for which defendants sought shareholder approval. Summary judgment was based on a settlement and release obtained in a Court of Chancery class action commenced by a different representative plaintiff but arising out of the same events. The Court of Chancery approved the settlement over the objections of the federal plaintiffs, who appeared at the settlement hearing.

The First Circuit Court of Appeals affirmed, rejecting as "jejune" plaintiffs' argument that the Court of Chancery could not release exclusively federal claims. Id. at 33. The court held that:

> [A]s a matter of federal law, a state court can approve and enforce a settlement which requires a party to release claims actually brought or potentially "bringable," in federal court under "exclusive jurisdiction" federal statutes even though the state court could not adjudicate claims arising under such statutes.... And where, as here, the federal law claims to be released stemmed from the same nucleus of operative fact as the state law claims, the release could legitimately be used as a defense to the former in a federal venue.

Id. at 34 (citations omitted).[6] See also McGowan Investors LP v. Keefe Bruyette & Woods, Inc., 540 F. Supp. 2d 571, 577-78 (E.D. Pa. 2008) (holding that Court of Chancery-approved class action release arising out of conversion of Philadelphia Stock Exchange to for-profit status barred class claims in federal court (including Exchange Act claims) under 28 U.S.C. § 1738; Sandler Assocs., L.P. v. Bellsouth Corp., 818 F. Supp. 695, 704-05 (D. Del. 1993) (release of shareholder claims in settlement approved by Court of Chancery barred federal claims arising out of same factual context where the "Chancery Court appropriately exercised its power to approve a release encompassing federal securities law claims . . . which were not within the subject matter jurisdiction of the Delaware state courts."), aff'd, 26 F.3d 123 (3d Cir. 1994).

---

[6] The court also rejected plaintiffs' argument that because they were not "named representatives in the class action and did not consent to the release," the preclusive effect of the Court of Chancery judgment was limited as it applied to them. Nottingham II, 925 F.2d at 32. The court held that this argument "misconceives the very nature of a Rule 23(b)(2) [non-opt out] class action." Id. The court concluded that the Court of Chancery provided plaintiffs with all process due in certifying the non-opt-out class and approving the settlement and that the judgment therefore bound plaintiff and released its claims. Id. at 32-33.

**IV. PLAINTIFF'S COLLATERAL ATTACK ON THE SETTLEMENT IS BARRED BY THE RELEASE AND DELAWARE JUDGMENT AS WELL.**

In its Amended Complaint, Plaintiff alleges that the Director Defendants breached their fiduciary duties by entering into the Settlement Agreement:

> Under the December 18, 2008, settlement, the Yahoo Board avoids all liability for their various breaches of fiduciary duties in 2008, including rejecting a valuable opportunity to sell the Company, using a defensive and self-interested severance plan to entrench themselves, engaging in an expensive yet doomed negotiation with Google, Inc., which faced antitrust issues from the outset, and disseminating materially misleading proxy materials to induce shareholder approval of their misconduct.

Am. Compl. ¶ 2; <u>see</u> <u>also</u> <u>id.</u> ¶¶ 13, 106-114, 120, 145. This claim is barred for four reasons: (1) it is released by the Settlement Agreement, (2) Plaintiff is bound under the doctrine of <u>res</u> <u>judicata</u> from challenging the Court of Chancery's determination that the Settlement Agreement was "fair, reasonable and adequate" and in the best interest of Yahoo! and its stockholders, (<u>see</u> RJN Ex. F (Delaware Judgment) ¶ 5), (3) this claim constitutes an impermissible collateral attack on the Court of Chancery's approval of the Settlement Agreement, and (4) it contravenes principles of comity and promoting settlement.

First, this claim is released by the Settlement Agreement. The Settlement Agreement releases all claims (1) "based upon alleged breaches of fiduciary duty to Yahoo! and its shareholders…," (2) "arising from or in connection with" the Director Defendants' "responses to Microsoft's proposal to acquire the Company, the Google Agreement or the proxy contest initiated by Carl Icahn," or the matters alleged in the Delaware Complaints, including the Director Defendants' adoption of the Severance Plans. <u>See</u> RJN Ex. C (Settlement Agreement) ¶ 1(q); RJN Ex. B (Revised SAC) ¶¶ 2, 4, 58-111. Plaintiff alleges that the Director Defendants breached their fiduciary duties by agreeing to settle the Delaware action in an attempt to avoid liability on these claims. Am. Compl. ¶ 2. This breach of fiduciary duty claim is "based upon" or "aris[es] from" the underlying alleged breaches of fiduciary duty and, therefore, is released.

Second, this claim is barred because Plaintiff is bound under principles of <u>res</u> <u>judicata</u> by Chancellor Chandler's determination that the Settlement Agreement was "fair, reasonable and

adequate" and in the best interest of Yahoo! and its stockholders. See RJN Ex. F (Delaware Judgment) ¶ 5. All of the elements of res judicata are met with respect to Plaintiff's claim that the Director Defendant's breached their fiduciary duties by entering into the Settlement Agreement. As set forth above, (1) the Court of Chancery had jurisdiction over the Delaware action, (2) the parties in this action are the same as the parties in the Delaware action, and (3) the Delaware Judgment will be final by the time the Court hears this motion. Bailey, 766 A.2d at 481. Furthermore, the Court of Chancery's determination that the Settlement Agreement is "fair, reasonable and adequate" and in the best interests of Yahoo! and its stockholders, (see RJN Ex. F (Delaware Judgment) ¶ 5), forecloses the possibility that the Director Defendants could have breached their fiduciary duties by entering into the Settlement Agreement. Thus, Chancellor Chandler's approval of the Settlement Agreement is (1) a determination adverse to Plaintiff's contention that the Director Defendants breached their fiduciary duties, (2) on the same issue raised by Plaintiff here, (Bailey, 766 A.2d at 481), and, therefore, Plaintiff is barred by res judicata from asserting this claim.

Plaintiff cannot avoid dismissal of its claim that the Director Defendants breached their fiduciary duties by entering into the Settlement Agreement because that issue could not have been litigated until the Settlement Agreement was approved. Indeed, under Delaware law the res judicata effect of a court-approved settlement extends to matters that could have been raised either in the settled action or as an objection to the settlement. In Ezzes v. Ackerman, 234 A.2d 444 (1967), plaintiff brought a derivative action against officers and directors of Chrysler Corporation alleging that the directors illegally altered Chrysler's stock option plan to enrich themselves. Id. at 445-46. The Court of Chancery dismissed on the basis that the action was barred under res judicata by a court-approved settlement of two prior derivative suits that broadly attacked the same stock option plan without raising the precise issue asserted by plaintiff. Id. at 445-46. The Supreme Court of Delaware affirmed. The court noted that plaintiff was aware of the facts underlying the claim before the Court of Chancery approved the settlement and was provided the opportunity to raise his claim with the Court of Chancery at or before the settlement hearing. Id. at 446. The

court thus held that "[r]es judicata is available to the defendants in the current action and is a complete bar to it." Id.

Like the plaintiff in Ezzes, Plaintiff could have raised its claim in the prior litigation in the form of an objection to the Settlement Agreement. Plaintiff's claim that the Director Defendants are escaping liability by settling the claims against them is essentially an objection that the settlement is inadequate because Yahoo! is not being sufficiently compensated for releasing these claims. Am. Compl. ¶ 2. Furthermore, there is no question that Plaintiff knew of this claim in time to object to the Settlement Agreement. Indeed, Plaintiff filed its Amended Complaint alleging this claim four days before the deadline to object. Therefore, this claim is barred by res judicata because Plaintiff could have brought the claim in the form of an objection to the Settlement Agreement.

Third, this claim is barred because it constitutes an impermissible collateral attack on the Delaware Judgment. Courts have forcefully rejected collateral attacks in the similar situation where directors are sued for taking actions mandated or permitted under a court-approved settlement agreement.

For example, in Barroway v. Reynolds, 176 A.2d 850 (Del. Ch. 1961) (Seitz, C.), plaintiffs brought suit alleging that the director defendants breached their fiduciary duties to shareholders by taking actions required by a class action settlement agreement approved by the Court of Chancery. Chancellor Seitz rejected plaintiffs' claim, finding that his approval of the earlier settlement was "a binding determination of the claim now sought to be asserted by these plaintiffs." Id. at 853. In so doing, the court stated that, "[w]hen the court is passing on the fairness of the terms of a settlement, it would seem that at least the parties thereto should be bound for all purposes by determinations which are made in resolving contentions attacking its terms where, as here, the pertinent facts are fully disclosed to and evaluated by the court. If the defendants are to be liable in independent actions attacking their actions in connection with the terms of the settlement, they have not really been permitted to settle for the consideration tendered." Id.; see also Ashare v. Brill, 560 F. Supp. 18, 19-21 (S.D.N.Y. 1983) (agreeing with defendant's argument that derivative action challenging management fees for fund advisors set

24

1 under prior court-approved settlement agreement was barred under <u>res judicata</u> as an impermissible

2 "collateral attack" on the prior court's judgment approving the settlement).

3   Finally, the Court should reject Plaintiff's collateral attack on the Delaware Judgment in the

4 interests of comity and of promoting settlement.  In <u>Sandler Associates.</u>, 818 F. Supp. 695, the

5 court dismissed a class action brought in federal court on the basis that in a parallel class action the

6 Court of Chancery had approved a settlement agreement that contained a release covering the

7 claims asserted in the federal suit.  <u>Id.</u> at 699.  The district court stated that

8
9
10
11
12
> The Court additionally is motivated to conclude that the state court-approved release forecloses this federal action based on principles of comity between state and federal courts.  To deny effect to a release of claims merely because it was given in an action commenced in state court would… engender uncertainty among class members and defendants as to their ability to retain the benefits of settlements, discourage settlements altogether and create unwarranted conflict between state and federal courts.

13 <u>Id.</u> at 705.  Like the settlement agreement in <u>Sandler</u>, the Settlement Agreement releases all of

14 Plaintiff's claims.  In the interest of comity, the promotion of settlement and the avoidance of

15 unseemly conflicts between this court and the Court of Chancery on issues of Delaware law, this

16 Court should dismiss the Amended Complaint.

17   For all of these reasons, this Court should reject Plaintiff's claim that the Director

18 Defendants breached their fiduciary duties by settling the Delaware action.

19 **CONCLUSION**

20   For all of the reasons set forth above, this Court should grant Yahoo!'s motion to dismiss

21 the Amended Complaint with prejudice.

22 DATED:  March 30, 2009

         SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
23
24
25       By: _____/s/ James E. Lyons_____

          JAMES E. LYONS
26          Attorneys for Nominal Defendant

          YAHOO! INC.
27
28