**E-FILED on** __06/15/09__

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CONGREGATION BETH AARON, DERIVATIVELY ON BEHALF OF YAHOO! INC., <br><br> Plaintiff, <br><br> v. <br><br> JERRY YANG, RON BURKLE, ROBERT KOTICK, GARY WILSON, MAGGIE WILDEROTTER, ROY BOSTOCK, ERIC HIPPEAU, ARTHUR R. KERN, EDWARD KOZEL, and VYOMESH JOSHI, <br><br> Defendants. | No. C-08-05438 RMW <br><br><br><br> ORDER GRANTING MOTION TO DISMISS <br><br> **[Re Docket No. 21]** |

Nominal defendant Yahoo! Inc. ("Yahoo!") moves to dismiss plaintiff Congregation Beth Aaron's ("the Congregation") derivative action challenging the actions of Yahoo!'s board of directors in responding to an acquisition proposal by Microsoft Corporation ("Microsoft") and in settling an ensuing Delaware lawsuit. Yahoo! argues first that the present action was released in the Delaware settlement and is here barred by *res judicata*. The Congregation opposes the motion, contending that the claims here are beyond the scope of the release, and that *res judicata* does not apply. The court has reviewed the papers and considered the arguments of counsel. For the following reasons, the court grants defendants' motion to dismiss.

## I. BACKGROUND

Yahoo! is the world's second largest provider of internet services to users and businesses. Am. Compl. ¶ 17. The individual defendants Jerry Yang, Ron Burkle, Robert Kotick, Gary Wilson, Maggie Wilderotter, Roy Bostock, Eric Hippeau, Arthur R. Kern, Edward Kozel, and Vyomesh Joshi (collectively, the "Director Defendants") are all current or former Yahoo! directors. *Id.* ¶¶ 18-27.

### A.   The Microsoft Proposal

The events giving rise to the present action began on February 1, 2008 when Microsoft publicly announced that it had made a proposal for a business combination of Microsoft and Yahoo!. *Id.* ¶ 33. Under the proposal, Microsoft would acquire all outstanding shares of Yahoo! common stock at $31 per share, a 62% premium over the January 31, 2008 closing price. *Id.* ¶ 3. That same day, Yahoo! issued a press release stating that the board would "evaluate [the] proposal carefully . . . ." *Id.* ¶ 3. Yahoo! also held a regularly-scheduled meeting on February 1 with its compensation consultant, Compensia, counsel, and Yahoo!'s senior human resources executives. *Id.* ¶ 38. On February 12, 2008, the board approved two "Change in Control Severance Plans" which provided eligible employees who are terminated without "cause" or who voluntarily resign for "good reason" within two years of a change in control of Yahoo! with the following benefits: 1) continuance of the employee's salary and medical benefits for between four and twenty-four months, depending on the employee's job level; 2) reimbursement for outplacement services for twenty-four months following the employee's severance date; and 3) accelerated vesting of certain stock options. *Id.* ¶¶ 42-43. The plans also provided that they could not be amended or rescinded until thirty days after a "Potential Change of Control Event" (e.g., Microsoft's business combination offer) has been rescinded. *Id.* ¶ 44. According to the complaint, these plans could increase the cost of a Microsoft acquisition by between $2.1 and $2.4 billion. *Id.* ¶ 43.

Over the next several months of 2008, negotiations continued, with both Yahoo! and Microsoft stating that they were amenable to a deal in principle, but disagreeing as to the appropriate price. *Id.* ¶¶ 46-54. On May 5, 2008, news sources reported that Microsoft was "walking away from its $42 billion unsolicited bid" for Yahoo!. *Id.* ¶ 56. At the time, Microsoft's outstanding offer

for Yahoo! was $33 per share, and the Yahoo! board was apparently unwilling to accept less than $37. *Id.* ¶¶ 53-54.

### B. The Google Partnership

In April of 2008, Google and Yahoo! conducted a "two week trial" which showed that Google's technology would generate more revenue for Yahoo! than Yahoo!'s own system. *Id.* ¶ 68. Soon afterward, it was reported that the United States Department of Justice was investigating the antitrust implications of the Google-Yahoo! test. *Id.* ¶ 69. Yahoo! and Google decided to pursue a partnership in May of 2008, but agreed not to begin the partnership until September of 2008 so the government would have a chance to review the deal. *Id.* ¶ 70. According to the complaint, the Google-Yahoo! deal was meant to erect an insurmountable obstacle for Microsoft's bid for Yahoo!: even if a Google-Yahoo! deal passed antitrust scrutiny, a Microsoft-Yahoo!-Google deal certainly would not. *Id.* ¶ 72. In a May 4, 2008 letter formally withdrawing Microsoft's offer, Microsoft CEO Steve Ballmer wrote to Yahoo! CEO Jerry Yang that the possible Google-Yahoo! deal was a principal reason for Microsoft ending its bid. *Id.* ¶ 73.

### C. The June Proxy Statement

On June 9, 2008 Yahoo! filed a Definitive Proxy Statement with the Securities and Exchange Commission pursuant to Section 14(a) of the Securities and Exchange Commission ("SEC") Act (the "Exchange Act"). *Id.* ¶ 61. The complaint focuses on statements made in the proxy statement regarding two proposals: 1) the reelection of Yahoo!'s board of directors; and 2) a stockholder proposal entitled the "Pay-for-Superior-Performance Principle Proposal." In support of reelection of the Yahoo! board, the proxy statement stated that the Change in Control Severance Plans were designed to "help retain [Yahoo!] employees, maintain a stable work environment, and provide certain economic benefits to the employees in the event their employment is actually or constructively terminated in connection with a change in control of the Company." *Id.* ¶ 62. Yahoo! also filed a supplemental statement on June 10, 2008 which included a series of questions and answers relating to the severance plans. *Id.* ¶ 64. The questions and answers reinforced that the plans were not meant to thwart a deal with Microsoft. *Id.* ¶ 64. The complaint alleges that these

1 statements were false, and that the severance plans were, in fact, designed to interfere with
2 Microsoft's offer. *Id.* ¶ 65.

3       The June 9, 2008 proxy statement also included statements opposing the Pay-for-Superior-
4 Performance Stockholder proposal. *Id.* ¶ 85. The third stakeholder's proposal in the proxy statement
5 sought to establish an executive compensation plan that would pay in proportion to executive
6 performance. *Id.* ¶ 85. The stakeholder's proposal contended that the then-in-place compensation
7 scheme was above the peer group medium, and not based on performance criteria. *Id.* The Yahoo!
8 board recommended that the shareholders vote against the pay-for-performance proposal, arguing
9 that the board needed the flexibility, in consultation with its independent compensation consultant,
10 to remain competitive in setting compensation. *Id.* ¶ 86. According to the complaint, the statements
11 regarding the pay-for-performance proposal are misleading because neither Compensia (Yahoo!'s
12 compensation consulting firm) nor F.W. Cook & Co. (the board's independent compensation
13 advisor) had attended any relevant meeting of the board or rendered any opinion for the benefit of
14 the board. *Id.* ¶ 89.

15     **D.**     **The Consolidated Delaware Actions**

16       In February of 2008 three derivative shareholder's class actions were filed in Delaware
17 Chancery Court. *Id.* ¶¶ 91-93. On March 5, 2008, the Chancery Court ordered the three putative
18 class actions consolidated under the caption *In re Yahoo! Shareholders Litigation*, Cons. C.A. No.
19 3561-CC. *Id.* ¶ 95. On March 12, 2008, the court consolidated two additional class actions into *In
20 re Yahoo! Shareholders Litigation*. *Id.* The plaintiffs filed the final complaint in the Delaware
21 action, the revised Second Amended and Supplemental Consolidated Complaint ("Delaware SAC")
22 on November 21, 2008. Decl. Jonah Van Zandt In Support Of Req. for Jud. Notice ¶ 3 (hereinafter
23 "Van Zandt Decl.") (the Delaware SAC is attached as Ex. B). The Delaware SAC brings five
24 counts, each for breach of fiduciary duty against Yahoo!'s board of directors for their actions in
25 response to Microsoft's acquisition proposal. Delaware SAC ¶¶ 1, 180-200.

26       On December 18, 2008, the parties submitted a Stipulation of Settlement to the Chancery
27 Court. Am. Compl. ¶ 108. As part of the settlement, the plaintiffs would release all claims relating
28 to Microsoft's offer, and Yahoo! would make a number of changes to the Change in Control

ORDER GRANTING MOTION TO DISMISS —No. C-08-05438 RMW
JAS           4

Severance Plans. *Id.* ¶¶ 108-109. The Stipulation of Settlement and the notice distributed to the class provide that the settlement shall release "any and all Settled Claims." Van Zandt Decl. Ex. C at Exs. A, B (hereinafter "Stipulation of Settlement" and "Settlement Notice," respectively). Both documents define "Settled Claims" to include:

> any and all claims . . . (i) that have been asserted in this Action by Plaintiffs, on behalf of themselves, the Class or Yahoo!, against any of the Released Parties, or (ii) that could have been asserted in any forum by Plaintiffs or any Class Member, on behalf of themselves, the Class or Yahoo!, against any of the Released Parties which arise out of, relate to, or are based upon alleged breaches of fiduciary duty to Yahoo! and its shareholders or other alleged violations of the law, including the federal securities laws or other federal, state, or local law, arising from or in connection with Defendants responses to Microsoft's proposal to acquire the Company, the Google Agreement or the proxy contest initiated by Carl Icahn, prior to the last day of the Class Period, including without limitation the matters alleged in the Second Amended Complaint and the Proposed Revised Second Amended Complaint . . . .

Settlement Notice ¶ 41. On December 19, 2008, the Delaware Chancery Court ordered that Yahoo! mail the Settlement Notice to class members and publish it in *Investor's Business Daily* and over the PR Newswire. Van Zandt Decl. Ex. D, ¶ 6 (hereinafter "Order for Notice of Hearing"). Plaintiff does not contend that it never received the Settlement Notice, and it appears that information about severance-plan changes were incorporated into plaintiff's amended complaint in this action. *Compare* Settlement Notice ¶ 37 *with* Am. Compl. ¶ 109. Plaintiff did not object to the settlement. *See* Pl.'s Opp. 15 ("Indeed, Plaintiff in this action had no reason to object to the Delaware Settlement . . ."). On March 6, 2009, the Delaware Chancery Court issued an order and final judgment approving the settlement, finding the settlement "fair, reasonable, and adequate and in the best interest of the Class, Yahoo!, and its stockholders . . . ." Van Zandt Decl. Ex. F, ¶ 5 (hereinafter "Delaware Judgment"). The Delaware judgment also barred plaintiffs, as provided for in the stipulation of settlement, from pursuing any of the "Settled Claims" defined above. *Id.* ¶ 7.

### E.     The Present Action

On December 3, 2008, plaintiff filed the instant action in this court, and filed its amended complaint on February 20, 2009. In this action the Congregation contends that the individual defendants' conduct in settling the Delaware lawsuits was a further breach of its fiduciary duty, and that the false statements in Yahoo!'s proxy statement violated the federal securities law. Am. Compl. ¶¶ 136-148. Defendants now move to dismiss the Congregation's complaint, arguing that

the breach of fiduciary duty and securities-law claims are barred by the settlement release and by *res judicata*.

## II. ANALYSIS

### A. The Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ---, 2009 WL 1361536, *12 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* In deciding a motion to dismiss, the court must accept as true all factual allegations, but not legal conclusions, in the complaint. *Id.* at *13.

The amended complaint includes four claims, alleging: 1) violation of § 14(a) of the Exchange Act for false or misleading statements in the June 9, 2009 Proxy Statement; 2) violation of § 20(a) of the SEC Act for exercising power and influence to cause Yahoo! to engage in illegal conduct; 3) the board's breach of fiduciary duty by further entrenching themselves through the December 18, 2009 settlement; 4) corporate waste for the unjust enrichment the directors received at Yahoo!'s expense. Am Compl. ¶¶ 136-148.

The Full Faith and Credit Act requires federal courts to give state court judgments the same effect they would have in the state in which they were entered. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) (citing 28 U.S.C. § 1738). § 1738 does not allow federal courts to "employ their own rules in determining the effect of state judgments." *Valley Nat. Bank of Arizona v. A.E. Rouse & Co.*, 121 F.3d 1332, 1335 (9th Cir. 1997). That is, absent a partial repeal of the Full Faith and Credit Act by another federal statute, a federal court *must* give a state judgment the same effect that it would have in the courts of the state in which it was rendered. *Id.* The court will therefore inquire whether, under Delaware law, the judgment of the Court of Chancery bars the claims in the present complaint.

1    Yahoo! contends that Delaware courts would find the complaint barred for two reasons.
2 First, because all asserted claims fall within the stipulation of settlement and final judgment's
3 release. Second, Yahoo! argues that, under the doctrine of *res judicata*, the Delaware court's
4 conclusion that the settlement was "fair, reasonable, and adequate, and in the best interests of the
5 Class, Yahoo! and its stockholders" binds this court, and bars the entrenchment claim. Because the
6 court concludes that below that the release bars all of plaintiff's claims, the court need not reach
7 defendants' argument that the complaint is barred by *res judicata*.

8    **B.    The Delaware Settlement Release**

9    Yahoo! contends that plaintiff's claims fall within the settlement's general release. Delaware
10 courts will enforce a general release of claims included in a class-action settlement. *Nottingham*
11 *Partners v. Trans-Lux Corp.*, 564 A.2d 1089, 1106 (Del. 1989). Indeed, claims may be released
12 even though the claim "was not presented and might not have been presentable in the class action."
13 *Id.* Before determining whether the individual claims fall within the release, the court first considers
14 two arguments the Congregation advances regarding the scope of the release.

15    Plaintiff first argues that the release should be limited to the claims brought by the plaintiff
16 class in the Delaware action. Plaintiff cites the case of *Adams v. Jankouskas*, 452 A.2d 148 (Del.
17 1982), in support of this argument. *Adams* held that, where a release is clear and unambiguous, it
18 should not lightly be set aside. 452 A.2d at 156. But if the release language is ambiguous, it must
19 be construed most strongly against the drafting party. *Id.* In *Adams*, the court found a release
20 ambiguous because it first recited specific subject matter, then followed that language with a general
21 release of all claims. *Id.* Therefore, the *Adams* court restricted the release to the specific recited
22 subject matter. *Id.*  In this case, the court does not find the release ambiguous, and there does not
23 appear to be any conflict between specific and general language in the definition of "Settled
24 Claims." Although the release is grammatically complex, it clearly specifies two types of released
25 claims: those "that have been asserted in this Action by Plaintiffs," and those that "could have been
26 asserted in any forum by Plaintiffs" that arise out of specified subject matter. *See* Stipulation of
27 Settlement ¶¶ 1(q)(i),1(q)(ii). This two-part structure explicitly expands the scope of the release
28 beyond the particular claims brought in the Delaware action. It is inconsistent with the language of

ORDER GRANTING MOTION TO DISMISS —No. C-08-05438 RMW
JAS                                                                                                                7

the release to limit it, as plaintiff suggests, to "the specific claims brought by and purportedly released by the Delaware plaintiffs." *See* Opp. to Mot. to Dismiss 8.  The court will therefore ascertain whether plaintiff's claims fall within the plain language of the settlement's general release.

Second, plaintiff argues that equitable principles weigh against the release of the federal claims because the Delaware class did not permit plaintiff to opt-out.  Plaintiff cites *National Super Spuds, Inc. v. New York Mercantile Exch.*, 660 F.2d 9, 18 (2d Cir. 1981), for the proposition that, "where a class member has no meaningful opportunity to opt[ ]out of a settlement which would extinguish valid claims, a release of claims is limited to the pleadings upon which the settlement is based." Opp. to Mot. to Dismiss 13.  But *National Super Spuds* did not deal with a no-opt-out class. Rather, the case held that a release in a class-action settlement cannot bind non-class members.  660 F.2d at 19.  The language quoted by plaintiff refers to the fact that non-class members cannot opt out of a class (nor, of course, opt in) and thus "have no meaningful opportunity to opt-out." *Id.* at 18. The case does not, however, appear to stand for any more general principle of equity.  Here, plaintiff was a member of the Delaware class, and *National Super Spuds* is therefore not germane to their case.

Furthermore, although the Delaware class did not permit members to opt out, plaintiff was not without remedy: it could have objected.  But plaintiff did not object; indeed, plaintiff now claims that it "had no reason to object to the Delaware Settlement, as [p]laintiff had no reason to believe that valuable federal law and unique entrenchment claims were being released."  Opp. to Mot. to Dismiss 15.  However, plaintiff alleges in the complaint that defendants' settlement of shareholder claims would "deprive [Yahoo!'s] shareholders of enhanced settlement value that negotiation could provide." Am. Compl. ¶ 116.  And the complaint states that "[d]efendants' settlement and further entrenchment was wrongful, unfair, and harmful to Yahoo!'s public stockholders, and represents an attempt by [d]efendants to aggrandize their own personal and financial positions and interest of board members at the expense of, and to the detriment of, the stockholders and [Yahoo!]." *Id.* ¶ 120. The complaint also states that defendants "ignored or did not protect against the numerous conflicts of interest in connection with the settlement and its entrenchment effect." *Id.* ¶ 121.  And finally, both the notice to the class and the stipulation of settlement explicitly stated that federal securities

ORDER GRANTING MOTION TO DISMISS —No. C-08-05438 RMW
JAS                                                           8

law claims were included in the release. *Id.* ¶ 112. Given these allegations, it appears that plaintiff had compelling reasons to object to the Delaware Settlement if they considered the proposed settlement unfair.

### 1. Plaintiff's Exchange Act Claims

As stated above, the Stipulation of Settlement and the Delaware Judgment include a general release of plaintiff's claims, including federal securities law claims, "arising from or in connection with Defendants responses to Microsoft's proposal to acquire the Company, the Google Agreement or the proxy contest initiated by Carl Icahn, prior to the last day of the Class Period, including without limitation the matters alleged in the Second Amended Complaint and the Proposed Revised Second Amended Complaint." Settlement Notice ¶ 41.

Plaintiff's claim for violation of § 14(a) of the Exchange Act challenges allegedly false and misleading statements made in the June 9, 2008 proxy statement regarding the Change in Control Severance Plans. The Delaware SAC, filed in the Delaware Court of Chancery on November 21, 2008, describes the severance plans in detail, and contends that they were designed to interfere with Microsoft's offer to purchase Yahoo!. *See* Delaware SAC ¶¶ 58-111. As the Delaware SAC states: "The Board's adoption of Yang's severance plans is both a standalone breach of fiduciary duty and is emblematic of the directors' general attitude towards the Microsoft merger proposal – ceding authority to interested director Yang to thwart Microsoft's integration objectives." *Id.* ¶ 111. The severance plans thus qualify under the release as a "response to Microsoft's proposal" and as a "matter alleged in the Second Amended Complaint."

The question, then, is whether the claim challenging the allegedly misleading statements in the June 9, 2008 proxy statement "arise from or in connection with" the severance plans themselves. The proxy statement, according to the complaint in this action, was a direct response to a stockholder proposal challenging the severance plans and seeking to revise them. Am. Compl. ¶¶ 61-67. The court concludes that the § 14(a) claim does arise from the severance plans, and is therefore encompassed by the release and subject to dismissal.

### 2. Plaintiff's Breach of Fiduciary Duty Claims

ORDER GRANTING MOTION TO DISMISS —No. C-08-05438 RMW
JAS                                                                                   9

1	The Delaware SAC brings four claims for breach of fiduciary duty against current and past
2	directors of Yahoo! for their actions in responding to Microsoft's offer.  Delaware SAC ¶¶ 180-200.
3	The instant suit includes many of the same allegations, but plaintiff does not appear to dispute that
4	the settlement release covers many of the alleged breaches of duty in the present complaint.  Instead,
5	plaintiff appears to distinguish this case from the Delaware action in two ways.  First, plaintiff
6	argues that they are here alleging that defendants breached their duty by settling the Delaware action
7	in a manner that was unfair and detrimental to Yahoo! and its shareholders.  Opp. to Mot. to Dismiss
8	10 (citing Am. Compl. ¶¶ 144-145).  And second, that the present complaint challenges a scheme or
9	course of conduct of entrenchment, while the Delaware action challenged specific acts.  *Id.*  That is,
10	as plaintiff states in its opposition, the "Delaware Settlement settled only claims relating to the
11	symptoms of entrenchment, but not the underlying disease, i.e., an ongoing plan by the Yahoo!
12	Board to entrench themselves in breach of their fiduciary duties to shareholders."  *Id.*

13	As for the latter contention, the release applies not only to claims that were included in the
14	Delaware action, but to claims that arise out of the matters alleged in the Delaware SAC.  Simply
15	because the complaint did not frame the breach of fiduciary duty claims as an ongoing course of
16	entrenchment does not place such a claim outside the release.  In fact, the Delaware SAC pleads
17	many of the facts that form the basis for plaintiff's now-alleged "ongoing plan by the Yahoo! Board"
18	to entrench themselves.  The court therefore concludes that a claim for an ongoing plan or scheme of
19	entrenchment is also within the scope of the Delaware Settlement's release.

20	Finally, plaintiff challenges the settlement of the Delaware lawsuit itself as constituting a
21	breach of fiduciary duty.  It is true that such a claim, and some facts on which it is based, could not
22	have been included in the Delaware SAC.  Nonetheless, the claim is still barred under the release if
23	it "arises from or in connection with" the events and matters provided for in the release.  The court
24	concludes that it does.  The Delaware SAC includes extensive allegations of a sustained course of
25	conduct by which, it claims, the individual defendants interfered with and attempted to derail
26	Microsoft's bid to purchase Yahoo!.  According to the Delaware SAC, Microsoft had made overtures
27	to Yahoo! since mid-2006 in support of a "friendly transaction," including an acquisition proposal in
28	January of 2007.  Delaware SAC ¶ 36.  The Delaware SAC goes on to describe the approval of the

Change in Control Severance Plans, the proposed deal with Google, the ultimate breakdown in negotiations between Yahoo!'s board and Microsoft, and the proxy disputes that followed. Delaware SAC ¶¶ 36-179. These allegations form the basis for the Delaware SAC's five claims for breach of fiduciary duty by the defendants in the Delaware action. The present complaint adds another act, the settlement of the Delaware action, that is allegedly a further breach of fiduciary duty and an entrenchment of the board. As pleaded in the Delaware SAC and the complaint in this action, the directors of Yahoo! undertook a year-long scheme of fiduciary breaches and entrenchment, at Yahoo!'s expense, leading up to and concluding with the settlement of the Delaware action. The Congregation now argues that the entrenchment-by-settlement claim neither "arises from" nor "arises in connection with" the Yahoo! board's response to Microsoft's bid or other matters in the Delaware action. Given the facts as alleged in the two complaints, the court concludes that it does arise of those events. The entrenchment-by-settlement claim is therefore barred by the release.

### 3.     Plaintiff's Remaining Claims

The amended complaint's second and fourth claims, for violation of § 20(a) of the Exchange Act and corporate waste, respectively, appear derivative of the other claims for relief, and therefore also fall within the Delaware settlement release.

Finally, because amendment would be futile, no leave to amend is given.

### III. ORDER

For the reasons stated above, the court grants defendants' motion to dismiss all of the Congregation's claims with prejudice.

DATED:     06/15/09

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

| | |
|---|---|
| Betsy Carol Manifold | manifold@whafh.com |
| Francis M. Gregorek | gregorek@whafh.com |
| Rachele R. Rickert | rickert@whafh.com |

**Counsel for Defendants:**

| | |
|---|---|
| Robert Leo Dell Angelo | robert.dellangelo@mto.com |
| Garrett J. Waltzer | gwaltzer@skadden.com |
| James Elliot Lyons | jlyons@skadden.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   06/15/09                                         JAS
                                                                            **Chambers of Judge Whyte**